UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                              Case No. 21-cr-20653

v.

                                               Honorable Thomas L. Ludington
NATHAN ZAIN OMAR,                        United States District Court Judge

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER**

In 2022, Defendant pleaded guilty to possessing a firearm with a prior felony conviction, in violation of 18 U.S.C. § 922(g)(1). He was sentenced to 37 months in prison, followed by three years of supervised release. Defendant served his prison term and began his supervised release in January 2024.

But Defendant's Probation Officer alleges that Defendant has violated two conditions of his supervised release, and a supervised release violation (SRV) case was initiated. After an initial hearing and detention hearing on September 15, 2025, Magistrate Judge Patricia T. Morris ordered Defendant detained pending his revocation hearing in February 2026. Defendant now moves for the revocation of that Detention Order. As explained below, his Motion will be denied.

I.

On June 2, 2021, officers for the Buena Vista Township Police Department received a call from dispatch instructing them to locate someone armed with a handgun. ECF No. 25 at PageID.57. Eventually, the officers did so and identified the armed person as Defendant Nathan Zain Omar, who held several prior felony convictions. *Id.* at PageID.57–58. Ultimately, the officers arrested Defendant, securing a .40 caliber Glock in the process. *Id.* at PageID.58.

Based on that incident, a grand jury indicted Defendant on October 20, 2021. ECF No. 1. The Indictment charged Defendant with possessing a firearm with a prior felony conviction, violating 18 U.S.C. § 922(g)(1). In the end, Defendant pleaded guilty to the offense. ECF No. 25.

Defendant was sentenced on November 10, 2022. ECF No. 40. He received a 37-month term of imprisonment, followed by 3 years of supervised release. *Id.* at PageID.185–86. Defendant served his prison term and began his term of supervised release on January 17, 2024. ECF No. 43 at PageID.197; *Inmate Search*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search by register number 26351-039) (last accessed Nov. 21, 2025).

On June 17, 2025, the Probation Officer supervising Defendant filed a petition alleging that Defendant violated the conditions of his supervised release, initiating a supervised release violation ("SRV") case under 18 U.S.C. § 3583(e)(3) and Criminal Rule 32.1. ECF No. 43. The Petition identifies two alleged violations of Defendant's conditions of supervision. *Id.* at PageID.198. First, it asserts that on November 19, 2024, Defendant committed an assault with intent to murder by stabbing a woman outside a bar seven times following an argument—conduct that has since resulted in state charges. *Id.* (outlining mandatory condition under 18 U.S.C. § 3583(d) providing Defendant "must not commit another federal[,] state[,] or local crime" while on supervised release). Second, the Petition states that, shortly after the incident, Defendant left the Eastern District of Michigan without authorization and traveled to Texas, where law enforcement arrested him roughly an hour north of the Mexican border and found $8,500 on his person. *Id.* (reciting Defendant's condition providing that he "must not knowingly leave the federal judicial district where [he] reside[s] without first getting permission from the Court or the Probation Officer").

On September 15, 2025, Defendant, with counsel, appeared before Magistrate Judge Patricia T. Morris for an initial appearance. *See* ECF No. 49. Judge Morris explained the Petition

and the SRV allegations to Defendant, to which he pleaded not guilty. *Id.* at 1:00–2:30. He also waived his right to a preliminary hearing. *Id.* at 15:10–34; *see also* ECF No. 51.

At that same hearing, Judge Morris conducted detention proceedings. Defense Counsel argued that Defendant should receive bond and not be detained pending an SRV revocation hearing—scheduled for February 12, 2026, ECF No. 53—for two reasons: (1) Defendant acted in self-defense in stabbing the woman on November 19, 2024, which he contended that video evidence proved; and (2) the purpose of his trip to Texas was to sell some of his property to pay for an attorney in his state criminal case, not to flee after the stabbing, and he had a return bus ticket as evidence.[1] ECF No. 49 at 6:03–8:27, 11:07–50. Ultimately, however, Judge Morris found that Defendant had not shown by clear and convincing evidence that he would not flee or pose a danger to the community, *see* Criminal Rule 32.1(a)(6); *see also* 18 U.S.C. § 3143(a)(1), thus ordering Defendant detained pending his SRV revocation hearing. *Id.* at 11:50–15:04; *see also* ECF No. 52.

Defendant's trial for his state criminal case began in late October 2025. *See People v. Omar*, Case No. 25-00241-FC (10th Cir. Saginaw Cnty., Mich.). On October 31, 2025, after the People rested, Defendant sought a directed verdict. *Id.* Defendant also sought a mistrial, in part, on the ground that the People offered tainted evidence. *Id.* The motion for directed verdict was denied, but the motion for mistrial was granted. *Id.* The state court then granted Defendant bond pending further proceedings. *Id.*; *see also* ECF No. 56-2.

---

[1] Initially, Defendant's Counsel sought to consent to his detention pending an SRV revocation hearing because he did not receive bond in his state case and was thus already detained. ECF No. 49 at 2:40–3:45. But Defendant expressed concerns with consenting to such detention, so Defense Counsel determined that she would proceed to argue that he was entitled to bond. *Id.* at 3:45–6:03.

On November 5, 2025, Defendant moved to have his detention order in this case revoked. ECF No. 56. He cites the mistrial and further asserts that he intended to return from Texas, again providing a bus ticket—albeit with a different person's name listed on it—that had a return trip contemplated in the trip itinerary. *Id.* at PageID.240–41; *see also* ECF Nos. 56-2; 56-3.

## II.

After an SRV petition is filed, a court may revoke a defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). But before the court makes such a finding, defendants are entitled to several procedural safeguards outlined in Criminal Rule 32.1. Still, these safeguards do not encompass the "'full panoply of rights' normally due to defendants facing criminal charges . . . because revocation deprives . . . the individual on supervised release [] 'not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent' on his compliance with certain restrictions." *United States v. Ivy*, 678 F. App'x 369, 372 (6th Cir. 2017) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)).

The first procedural requirement under Criminal Rule 32.1 is an initial appearance. FED. R. CRIM. P. 32.1(a). For this initial appearance, a "person held in custody for violating probation or supervised release must be taken without unnecessary delay before a magistrate judge." FED. R. CRIM. P. 32.1(a)(1). There, the judge must explain (1) the alleged SRV, (2) the defendant's right to counsel, and (3) if held in custody, the defendant's right to a "preliminary hearing under" Criminal Rule 32.1(b)(1). FED. R. CRIM. P. 32.1(a)(3). Generally, the judge must also order the defendant detained, *see* 18 U.S.C. § 3143(a)(1), unless the defendant shows "by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community." FED. R. CRIM. P. 32.1(a)(6). On that front, clear and convincing evidence exists when the evidence produces "an abiding conviction that the truth of its factual contentions is 'highly probable.'"

*Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). This standard imposes a higher threshold than proof by a preponderance of the evidence, but a lower threshold than proof beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 423–25 (1979).

The second requirement is a preliminary hearing for supervised release revocations. FED. R. CRIM. P. 32.1(b). When a defendant "is in custody for" an SRV, "a magistrate judge must promptly conduct a hearing to determine whether there is probable cause to believe that a violation occurred." FED. R. CRIM. P. 32.1(b)(1)(A). The judge must provide notice of the hearing and explain the hearing's purpose and reiterate the defendant's right to counsel. FED. R. CRIM. P. 32.1(b)(1)(B)(i). The judge must also provide the defendant an opportunity to (1) present evidence, and (2) "question any adverse witness" unless the "interest of justice does not require the witness to appear." FED. R. CRIM. P. 32.1(b)(1)(B)(ii)–(iii). Having considered the information presented, if the "judge finds probable cause," the case will proceed to a third stage. And importantly, a defendant may waive his right to a preliminary hearing, as Defendant did here, and proceed to the third stage without contesting probable cause. FED. R. CRIM. P. 32.1(b)(1)(A).

That third stage of an SRV case involving a potential supervised release revocation is a revocation hearing. Indeed, unless waived, "the court must hold a revocation hearing" before revoking a defendant's supervised release. *See* FED. R. CRIM. P. 32.1(b)(2), (c). For the revocation hearing, Criminal Rule 32.1 provides the defendant with several rights: the rights to (1) "written notice of the" alleged SRV; (2) "disclosure of the evidence against" the defendant; (3) "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear"; (4) the right to counsel and notice of that right; and (5) "an opportunity to make a statement and present any information in mitigation." FED. R. CRIM. P. 32.1(b). Having heeded those rights, if the court finds

an SRV by the preponderance of the evidence, the court may revoke the defendants supervised release "after considering the factors" listed in §§ "3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)."[2] *See* 18 U.S.C. § 3583(e)(3).

### III.

Turn to the merits of Defendant's Motion to Revoke his Detention Order, ECF No. 56. In essence, though Defendant's SRV case is pending phase three—his revocation hearing on February 12, 2026—his Motion seeks to revisit phase one, reopening his detention hearing and revoking his detention order. *See* ECF No. 56. But he has not satisfied the standard to do so.

Neither Criminal Rule 32.1 nor the statutes that it references permit reopening a detention hearing in an SRV case. This differs from preconviction criminal proceedings, in which defendants may seek to reopen a detention hearing before trial under 18 U.S.C. § 3142(f)(2). And § 3142(f)(2)'s express limitation to pretrial detention hearings, without a corresponding vehicle in SRV cases, seemingly implies that defendants may not seek to reopen a detention hearing in SRV cases. *See Esteras*, 606 U.S. at 195–96 (explaining the interpretive canon "*expressio unius est exclusio alterius*," which warrants this kind of negative inference). After all, SRV defendants are not entitled to the "'full panoply of rights' normally due to defendants facing criminal charges." *Ivy*, 678 F. App'x at 372 (quoting *Morrissey*, 408 U.S. at 480). But because due process is delicate, some courts have applied the § 3142(f)(2) standards to SRV cases. *See, e.g.*, *United States v. Smith*,

---

[2] Importantly, § 3583(e) omits § 3553(a)(2)(A) as a relevant factor—which directs courts to consider "the need for the sentence imposed" "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" at sentencing. And "[t]he omission of § 3553(a)(2)(A) from the list of factors [in § 3583(e)] means that courts may not consider it" when deciding whether to revoke a term of supervised release. *Esteras v. United States*, 606 U.S. 185, 197 (2025). The same goes for § 3553(a)(3). *See id.* at 193–95 (noting that while "§ 3553(a) lays out 10 factors that inform a district court's sentencing decision," § 3583(e) "provides that a district court may revoke a term of supervised release after considering 8 of these 10 factors," meaning the two not listed may not be considered).

337 F.R.D. 366, 368 (N.D. Fla. 2020). Out of caution—and theoretically erring on the side of providing opportunity for more process than is due—this Court will too.

Under § 3142(f)(2), a court may reopen a detention hearing if the defendant satisfies two conditions. *United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012). First, a defendant must identify "new information . . . that was unknown to" him "at the time of the" initial hearing. *Id.* Second, the new information must have "a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of any other person in the community." *Id.* Logically, when, as here, the magistrate judge ordered detention based on risks of flight *and* danger, the defendant must demonstrate that any new information reduces both the likelihood that he will flee *and* the risk he poses to the community. *See id*. And even if the defendant satisfies both conditions, § 3142(f)(2)'s "use of the word 'may'" gives the court discretion to decline to reopen the detention hearing. *Id.* at 601.

Here, Defendant has not satisfied both conditions. Up front, the only new information that Defendant presents is that a mistrial was granted in his state case; all other information that he presents, like the bus ticket, existed at the time of the initial hearing, and Defendant incorporated it into his argument. *Compare* ECF No. 49 at 6:03–8:27, 11:07–50 *with* ECF Nos. 56; 56-2; 56-3. Even assuming the mistrial in Defendant's state case could materially change the finding of danger, it does not materially bear on whether he is a flight risk such that it could provide clear and convincing evidence that he will not flee. As a result, Defendant has not demonstrated cause to reopen his detention hearing. So Defendant's Motion for Revocation of Detention Order, ECF No. 56, will be denied.

## IV.

Accordingly, it is **ORDERED** that Defendant Nathan Omar's Motion for Revocation of Detention Order, ECF No. 56, is **DENIED.**

- 8 -

Dated: December 4, 2025          <u>s/Thomas L. Ludington</u>
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge